# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3509 | **DATE** | 5/10/2002 |
| **CASE TITLE** | USA vs. Safe Environment Corp. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendant John Giura's motion for summary judgment (18-1) is granted. And the United States' motion for summary judgment (5-1, 11-1) is granted as to defendants Safe Environment Corp and Richard Lair but denied as to defendant Giura. Judgment is entered as follows: (1) in favor of the United States and against defendants Safe Environment Corp and Richard Lair, jointly and severally, in the amount of $36,237, and (2), in favor of defendant John Giura and against the United States.

(11) ■ [For further detail see

| | No notices required, advised in open court. | | | | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | MAY 13 2002 | | 22 |
| ✓ | Docketing to mail notices. | | | date docketed | | |
| ✓ | Mail AO 450 form. | | | *cm* | | |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | | |
| | | | | date mailed notice | | |
| OR | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAY 1 3 2002

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 00 C 3509 |
| | ) | |
| SAFE ENVIRONMENT CORPORATION, | ) | |
| RICHARD LAIR, and JOHN GIURA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States has sued Safe Environment Corp. (SECO), its former president and principal shareholder Richard Lair, and John Giura, an employee and minority shareholder, under the False Claims Act, 31 U.S.C. §3729(a). The government and Giura have both moved for summary judgment. For the reasons stated below, Giura's motion is granted, and the government's motion is granted as to SECO and Lair but denied as to Giura.

### Facts

Amtrak is a mixed-ownership, for-profit government corporation which operates intercity and commuter railroad services. *See* 45 U.S.C. §541; 31 U.S.C. §9101(2). From 1991 through 1998, Amtrak planned and executed a project to improve the facilities at Chicago's Union Station, which Amtrak owns, and in the course of that project contracted with various outside contractors for construction services. Raymond Corcoran was Amtrak's project manager, and his responsibilities included selecting and supervising contractors.

SECO submitted a bid to remove asbestos from pipes near the Taylor Street bridge, which was part of the Union Station improvement project. Defendant Richard Lair was SECO's principal shareholder and president; defendant John Giura was an employee and minority shareholder. On December 15, 1993, Corcoran telephoned SECO left a message for Lair with Giura. The message said that Corcoran had called, had said that Lair should include in SECO's bid proposal for the Taylor Street bridge project $9,700 for the cost of a consultant, and that Lair should call Corcoran. Pltf. Ex. 2. No mention was made of the name of the consultant. Later that day, Lair submitted SECO's bid to Corcoran, proposing to do the necessary work for $23,860. Corcoran approved SECO's bid. SECO performed the work and submitted an invoice for $23,860 on March 18, 1994. Corcoran approved Amtrak's payment to SECO, and Amtrak paid the invoice on April 7, 1994.

In the meantime, Lauria & Co. had submitted an invoice to SECO for $9,579, Pltf. Ex. 9, though it had performed no services in connection with the project. After SECO received payment from Amtrak, SECO issued Lauria & Co. a check, signed by Giura, for the amount of its invoice. Pltf. Ex. 10. Lauria & Co. then sent Macor Electric a check for $1,500. Pltf. Ex. 11. Macor was owned by Corcoran; it had no assets or employees.

In October 1999, Corcoran entered a guilty plea to five counts of mail fraud, admitting that he had solicited and accepted kickbacks from contractors on the Union Station project and had directed them to inflate their invoices to cover the kickbacks. In his plea agreement, Corcoran admitted that he had directed SECO to add $9,700 to its bid price and had directed Lauria & Co. to send SECO a bill for $9,579. He further admitted that Lauria & Co. had done no work on the project and that the Lauria bill was "simply a method for [Corcoran] to defraud

2

Amtrak." Pltf. Ex. 1, p. 6.

In support of his motion for summary judgment, Giura has submitted an affidavit in which he states that he did not know or communicate with Corcoran, except on the occasion of the December 15, 1993 phone message (in which he misspelled Corcoran's name). Giura says that he did not know the meaning or the context of the telephone message – a fact which, he says, is confirmed by question marks he wrote in the message. Giura also states that he was not involved in any way in the negotiation, bidding, or execution of the contracts between SECO, Lauria & Co. and Amtrak, and that he was not responsible in any way for SECO's day-to-day operations. Giura concedes that he had the authority to sign checks over $5,000 but says that when signing checks, he reviewed only the invoices, relying on Lair as to their propriety, and that he did not review the terms, scope, or propriety of the work performed.

The government has submitted an affidavit from Chief Inspector John Grimes of Amtrak's Office of Inspector General, who participated in the investigation that led to Corcoran's indictment. Grimes interviewed Giura in December 1996. According to Grimes, Giura stated that he assumed a management role at SECO in late 1993 or early 1994. Giura told Grimes that he remembered the Taylor Street Bridge asbestos removal project but that Lair had handled the details of the project. Though Giura did not remember Lauria & Co. at the outset of the interview, he later recalled that Lauria had come to SECO and had spoken about organizing SECO's workers to join a union. Giura said that he had told Lauria to leave and that SECO would have nothing to do with him; he described Lauria as "sleazy." Giura also told Grimes that he recalled taking a phone message from Corcoran for Lair about adding the price of a consultant to the Taylor Street Bridge contract, and that he gave Lair the message. Giura denied any

3

knowledge about Lauria but said that he did not believe that Lauria had performed any services for the fee that it obtained from SECO.

The government offers no evidence, however, that Giura was involved in the preparation of SECO's bid for the Taylor Street bridge project or in the preparation or submission of SECO's invoice to Amtrak.

## Discussion

In deciding a motion for summary judgment, the Court views the evidence and draws reasonable inferences in favor of the non-moving party. *E.g., Central States, Southeast & Southwest Areas Pension Fund v. White*, 258 F.3d 636, 639 (7th Cir. 2001). Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 450 (7th Cir. 1998); Fed. R. Civ. P. 56(c). To avoid summary judgment, the non-moving party must respond with affidavits or otherwise, "setting forth specific facts showing that there is a genuine issue for trial." *Albiero v. City of Kankakee*, 246 F.3d 927, 928 (7th Cir. 2001); Fed. R. Civ. P. 56(e).

The False Claims Act (FCA) imposes liability on any person who knowingly presents, or causes to be presented to the government a false or fraudulent claim for payment. 31 U.S.C. §3729(a)(1); *Hindo v. University of Health Sciences*, 65 F.3d 608, 613 (7th Cir. 1995). Liability under the FCA "requires proof of three elements: (1) the defendant made a record or statement in order to get the government to pay money; (2) the record or statement was false or fraudulent; and (3) the defendant knew it was false or fraudulent." *U.S. ex rel. Lamers v. City of Green Bay*,

4

168 F.3d 1013, 1018 (7th Cir. 1999). A person acts "knowingly" if the he or she "'(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.'" *Id.* (quoting 31 U.S.C. §3729(b)). The statute reaches "any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.'" *United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-45 (1943)).

Giura may have played some role in the underlying fraud – by issuing the check to Lauria – but the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *Rivera*, 55 F.3d at 709; *see also Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266 (9th Cir. 1996). As a result, one of the principal issues in a False Claims Act case is "whether the defendant ever presented a 'false or fraudulent claim' to the government." *Westinghouse*, 176 F.3d at 785. That is where the government's claim against Giura fails: it has offered no evidence from which a reasonable jury could find that Giura presented, caused to be presented, or participated in the presentation of a false claim to the government. Taking the evidence in the light most favorable to the government, the evidence of Giura's "involvement" boils down to two facts: he passed on a message in which Corcoran told Lair to add a sum to SECO's bid for an unnamed contractor, and he later issued a check to a company that he knew or had reason to believe had performed no services. This is insufficient to impose FCA liability on Giura, for it does not add up to evidence that he presented a false claim

5

to Amtrak. Giura is not claimed to have participated in preparing the bid or SECO's invoice, and he is not claimed to have had any dealings with Corcoran or Amtrak beyond the single phone message. There is no evidence that Giura had any idea whether Lair carried out Corcoran's request made in the phone message, and more specifically, there is no evidence from which a jury reasonably could infer that Giura had any idea that SECO's contract price actually had been inflated by Lair or that SECO's invoice to Amtrak actually included any amount for the unnamed "consultant." In sum, taking the evidence in the light most favorable to the government, no reasonable jury could find that Giura had participated in any way in the presentation of a false claim. For this reason, we deny the government's motion for summary judgment as to Giura, and we grant Giura's motion for summary judgment.

SECO and Lair have not responded to the government's motion for summary judgment, and thus they are deemed to have conceded the facts set forth in the government's submission. statement. *See, e.g., Best v. Shell Oil Co.,* 107 F.3d 544, 547 (7th Cir.1997). Those facts are sufficient to establish that Lair, acting in his capacity as president of SECO, submitted a claim to Amtrak that was false in that it included a sum for a non-existent "consultant," and that he did so knowingly, in that he was responsible for the management project and thus knew who had and had not performed work. For this reason, we grant the government's motion for summary judgment as to SECO and Lair.

Under the FCA, the government is entitled to recover a civil penalty of not less than $5,000 and not more than $10,000, plus three times the government's actual damages. 31 U.S.C. §3729(a). The evidence establishes that SECO's invoice was inflated by $9,579, the amount of Lauria & Co.'s invoice. The Court imposes a penalty of $7,500, the middle of the statutory

range.

## Conclusion

For the reasons stated above, defendant John Giura's motion for summary judgment [docket item 18-1] is granted, and the United States' motion for summary judgment [items 5-1, 11-1] is granted as to defendants Safe Environment Corp. and Richard Lair but denied as to defendant Giura. The Clerk is directed to enter judgment as follows: (1) in favor of the United States and against defendants Safe Environment Corp. and Richard Lair, jointly and severally, in the amount of $36,237, and (2) in favor of defendant John Giura and against the United States.

MATTHEW F. KENNELLY
United States District Judge

Date: May 10, 2002